UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE:

MICHAEL THERON SMITH, JR.                CASE NO. 23-10373-PDR

        Debtor.
_____

BARBARA MOHON,

        Plaintiff,

v.

MICHAEL THERON SMITH JR.

        Defendant.
_____

## COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

COMES NOW, Barbara Mohon ("Mohon"), by and through undersigned counsel, and files this Complaint pursuant to Federal Rule of Bankruptcy Procedure 7001 and 11 U.S.C. § 523(a)(6) seeking the exception from discharge of the debt owed to her, and states:

1. Mohon is an individual residing in New Mexico.

2. Michael Theron Smith, Jr. ("Smith") is an individual residing in Broward County, Florida who filed a chapter 11 bankruptcy on January 18, 2023.

3. This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1334(b).

4. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (I).

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

1

6. The Mohon consents to the entry of a final judgment by this Court on all counts in this Complaint.

7. This action arises from Smith's actions in violation of the anti-harassment provisions of the New Mexico Unfair Practices Act ("the UPA") and the federal Telephone Consumer Protection Act ("the TCPA").

8. The UPA is intended to protect consumer privacy by prohibiting certain unsolicited, autodialed and pre-recorded message telemarketing calls, and to provide for transparency by requiring that telemarketers identify themselves and who they are calling for during the calls. The TCPA is of similar design.

9. The TCPA and the FTC's Telemarketing Sales Rule ("the TSR") established the National Do-Not-Call Registry ("the Registry"). The Registry allows people to list their telephone numbers and thereby indicate their instructions to NOT receive telephone solicitations. *See* www.donotcall.gov

10. Telemarketers are required by law to subscribe to and comply with the Registry. NMSA § 57-12-22(C); 47 U.S.C. § 227(C)(3)(F-G); 16 C.F.R. Part 310; 47 C.F.R. § 64.1200(c).

11. The UPA and the TCPA each established private rights of action to recover statutory damages for unlawful telephone solicitations and for violations of the Registry's implementing regulations.[1]

---

1. The FCC has defined "robocalls" as "calls that require consumer consent", including "calls made either with an automatic telephone dialing system ("autodialer") or with a prerecorded or artificial voice". *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Declaratory Ruling and Order released on 7/10/15, 30 FCC Rcd. 7961 ("FCC 15-72"), footnote 1.

12. Smith is or was the President of a company known as Health Advisors.

13. Health Advisors initiated "robocalls" in many jurisdictions, including New Mexico, for the purpose of advertising consumer products and services they falsely claimed were "health insurance". Smith authorized, approved and controlled robocall telemarketing to sell Health Advisors' sham products and services throughout the State of New Mexico.

14. Starting in June 2018 and continuing well into the year 2019, Smith directed his agents to repeatedly called Mohon's cell phone number 505-501-3610 with the same standardized, scripted sales pitch.

15. When Mohon answered any of these calls she was always greeted by a pre-recorded message or artificial voice which sought to interest her in "health insurance". The pre-recorded message in all the calls was always the same. Smith created and approved the use of this pre-recorded message.

16. Mohon attempted to use a call-blocking feature on her cell phone to block the robo-calls, but Smith, and his company, evaded this cell-phone feature by intentionally using numerous other phone numbers to send their robo-calls, so Mohon continued to be harassed by Smith, and his company.

17. All calls to Mohon from Smith or his agents were intentionally, knowingly made and initiated using a form of Caller ID spoofing that Subchapter E of the TCPA defines as a crime. Mohon could never reach the caller back by returning a call to the Caller ID number Smith's agents manipulated her phone's Caller ID to display.

18. The pre-recorded message gave Mohon an option to press a number on her phone's keypad to be placed on a do-not-call list. After Mohon's phone's call-blocking feature did not stop the calls, Mohon repeatedly complied with the opt-out feature stated in the pre-recorded message but the calls continued.

19. Mohon did not answer many of the calls from Smith's agents which resulted in Smith's auto-dialers repeatedly leaving this same standardized, pre-recorded message on Mohon's phone's voice-mail: ". . . . . hassle-free to sign up. We have pre-approvals ready in your area including Cigna, Blue Cross, Aetna, United and many more. Press 1 to get a hassle-free assessment or press 2 to be placed on our do-not-call list. Thanks for your time and be healthy and blessed." Mohon could not "press 2" to stop the calls when she received Defendants' standardized voice-mail message.

20. On multiple occasions Mohon answered one of Smith's calls with the pre-recorded message then waited for a live telemarketer to come on the line so she could make specific do-not-call requests to a real person. This too never stopped the calls and usually resulted in the live telemarketer just abruptly disconnecting the call.

21. The sponsors of Smith's telemarketing calls were never identified within 15 seconds of Mohon answering the calls, and were never identified within the pre-recorded voicemail messages left on Mohon's phone if she did not answer. The pre-recorded voicemail messages were over 15 seconds long.

22. Because Smith's unlawful robo-calls continued, Mohon finally decided to listen to and comply with Smith's scripted sales pitch. Mohon did so solely for the purpose of trying

4

to identify the parties who were responsible for repeatedly, illegally robo-calling her cell phone.

23. On several occasions, Mohon bought the sham-product Smith marketed as "health-insurance", to directly connect a Seller to the calls so she could demand the Seller make the calls stop. These Sellers provided additional evidence that Smith controlled the calls to Mohon on Sellers' behalf, including the fact that when Sellers informed Smith about Mohon's complaints, Smith's calls to Mohon finally stopped.

24. Mohon never gave prior express written consent to receive telephone solicitations from Smith and has never had any prior relationship with Smith.

25. Smith's calls complained of herein aggravated and harassed Mohon, wasted her time, invaded her privacy, disrupted her days, were an obnoxious nuisance and cost her electricity necessary to recharge her telephone.

26. All the while engaging in the foregoing conduct, Smith and his agents did not subscribe to or comply with the Registry as required by 47 C.F.R. § 64.1200**(c)**.

27. All the while engaging in the foregoing conduct, Smith and his agents failed to adopt and implement the business policies and practices required by 47 C.F.R. § 64.1200**(d)**.

28. Telemarketing to phone numbers listed on the Registry results in consumer complaints. Based on the numbers of consumer complaints to and about his telemarketers, Smith had an actual awareness or should have had an actual awareness that his agents actually making telephone solicitations for him, including the calls to Mohon described above, telephone people who object to the calls, to people who did not consent to them, and to people whose telephone numbers are listed on the Registry. Smith also had an actual

awareness or should have had an actual awareness that his robocalls were unlawful because he knew he was using lead-lists consisting of many millions of phone numbers, so many phone numbers that he knew his agents were robodialing do-not-call registered phone numbers of consumers who had not given prior express written consent to be called.

29. Smith prepared or specifically approved the pre-recorded message his agents used in the calls to Mohon.

30. Minimal oversight by Smith would have confirmed for him that the telemarketing done on his behalf was done without complying with the Registry, the TCPA or the TSR.

31. Smith gave and continued to give substantial assistance or support to his agents and each other while knowing, consciously avoiding knowing or being recklessly indifferent to the fact that they were all engaged in acts or practices that violated the UPA, the TCPA and the Telemarketing Sales Rule.

32. Smith used robocalling because it allows for thousands of automated sales calls to be initiated in a very short period of time, but his sales representatives only needed to actually spend time on the phone with consumers who responded positively. Smith thereby illegally shifted the cost of aggravation and wasted time to the public at large and away from himself where it belonged.

33. Smith's conduct set forth herein and directed at Mohon in New Mexico was deliberate, intentional, willful and volitional.

34. Mohon's phone number referred to above that Smith or his agents and co-conspirators repeatedly called, has at all relevant times been continuously listed on the Registry.

35. A direct connection exists between Smith and his agents herein and the calls complained of by Mohon because the calls were directly made on behalf of Smith so they could all profit from a common enterprise in which they all substantially participated.

36. Smith is liable for the calls complained of by Mohon herein because he:

   a) authorized agents to initiate the phone calls;

   b) directly or indirectly controlled the persons who actually made or initiated the calls;

   c) allowed the telemarketers access to information and operating systems within his control for the purpose of selling goods and services, without which they would not be able to sell using robocalling;

   d) allowed the telemarketers to enter or provide consumer information into his sales or operational systems;

   e) approved, wrote, reviewed or participated in developing the telemarketing sales scripts and messages;

   f) Smith reasonably should have known or consciously avoided knowing that the actual callers and telemarketers were violating the law and Smith failed to take effective steps within their power to require compliance;  OR

   g) Smith gave substantial assistance or support to his agents and each other while knowing, consciously avoiding knowing, or being recklessly indifferent to the fact that their co-conspirators were engaged in acts or practices that violated the TCPA, the UPA and/or the TSR.

37. Smith ratified the robocalls to Mohon described above because he accepted and intended the benefits to him of the calls while knowing or consciously avoiding knowing their telemarketer-agents were calling phone numbers listed on the Registry without complying with the Registry.

38. Smith was at all times well-aware of the rules, laws, regulations and requirements adopted and implemented by the TCPA, the TSR and complementary state-laws like the UPA, but he willfully chose to disregard these rules, regulations and laws for purposes of his own financial gain. Smith has operated and controlled call-centers for many years.

COUNT I – OBJECTION TO DISCHARGE PURSUANT TO 11 U.S.C. 523(a)(6)

Mohon realleges paragraphs 1 through 38 as though set forth herein.

39. Smith engaged in robo-calling in violation of the Telephone Consumer Protection Act and the New Mexico Unfair Practices Act.

40. Smith caused these robo-calls to be directed to Mohon.

41. Mohon was injured by these robo-calls.

42. Smith's actions were willful and malicious in which he intended such action to cause harm to Mohon.

COUNT II – DAMAGES PURSUANT TO NEW MEXICO UNFAIR PRACTICES ACT

Mohon realleges paragraphs 1 through 42 as though set forth herein.

43. Pursuant to the New Mexico Unfair Practices Act ("the UPA") Mohon is entitled to recover her statutory damages for each violation of the UPA and her attorney fees. As

set forth above Smith's conduct was knowing and/or willful therefore Mohon is entitled to and should be awarded treble her statutory damages.

44. The calls to Mohon described above each violated NMSA §57-12-22(A)(1), §57-12-22(B)(1), §57-12-22(C)(1) and §57-12-22(C)(2):   4 violations of the statute within each call.   Mohon should be awarded $300 for each separate or distinct violation of the statute because Defendants' violations were willful.

## COUNT III DAMAGES FOR VIOLATION OF THE TCPA'S SUBSECTION B

Mohon realleges paragraphs 1 through 42 as though set forth herein.

45. The foregoing acts and omissions of Smith or his agents on his behalf constitute multiple violations of 47 U.S.C. § 227(b) and its implementing regulations.

46. Each of Smith's calls to Mohon were made with an automatic telephone dialing system ("auto-dialer"), AND each call also used a pre-recorded message:  2 violations of the statute within each call.

47. Mohon is entitled to and should be awarded against Smith $500 in damages for each and every violation of the TCPA's Subsection B.  Because Smith's conduct set forth above was knowing and/or willful Mohon should be awarded treble damages of up to $1,500 for each and every violation.

## COUNT IV DAMAGES FOR VIOLATION OF THE TCPA's SUBSECTION C

Mohon realleges paragraphs 1 through 42 as though set forth herein.

48. Smith or his agents on his behalf made telephone solicitations to Mohon more than once within 12 months despite the fact her phone number Smith or his agents called has been continuously listed on the Registry at all relevant times.

9

49. For each of Smith's calls to Mohon the subject of this Complaint, Mohon should recover up to an additional $1500 pursuant to 47 C.F.R. § 64.1200**(c)**.

50. For each of Smith's calls to Mohon the subject of this Complaint, Mohon should recover up to an additional $1500 pursuant to 47 C.F.R. § 64.1200**(d)**.

WHEREFORE Mohon respectfully requests that the Court enter judgment against Smith determining that the debt owed by Mohon by Smith is non dischargeable pursuant to 11 U.S.C. § 523(a)(6). Mohon prays for entry of judgment for - her statutory, actual, nominal and/or treble damages sufficient in size to set an example and deter in the future the conduct complained of by Smith or others. Mohon prays for such other and further relief as the Court finds proper. Mohon requests an award of her attorney fees and costs.

Dated 4/10/23

> BRIAN K. MCMAHON, P.A.
> 1401 Forum Way, Suite 730
> West Palm Beach, FL 33401
> Tel (561)296-2065
> Fax (561)487-3111
> briankmcmahon@gmail.com
>
> s/ Brian K. McMahon
>
> Brian K. McMahon
> FL Bar No. 853704